510 So.2d 324 (1987)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
STANDARD OIL COMPANY, INC., W. Dan Witherington, D/B/a Dan's Standard Service Station, et al., Appellees.
No. 86-1891.
District Court of Appeal of Florida, Second District.
May 22, 1987.
Rehearing Denied July 30, 1987.
*325 Franz Eric Dorn, Appellate Atty., Craig M. Dickerson, Trial Atty., and A.J. Spalla, Gen. Counsel, Tallahassee, for appellant.
Ellen J. Neil of Holland & Knight, Tampa, for appellee, Chevron U.S.A., Inc.
SCHOONOVER, Judge.
The State of Florida, Department of Transportation (DOT), appeals an award of business damages resulting from the state's condemnation of certain land owned by appellee, Standard Oil Company, Inc., n/k/a Chevron U.S.A., Inc. (Chevron). We find that Chevron was not entitled to business damages and, accordingly, reverse.
On September 13, 1985, DOT instituted an eminent domain proceeding seeking to condemn a parcel of land owned by Chevron in Pinellas County, Florida. The parcel, referred to as parcel 109, amounted to approximately one-half of the property owned by Chevron at that location. Chevron had purchased the property and constructed a service station thereon in 1963. In 1969, Chevron leased the property to appellee, W. Dan Witherington, d/b/a Dan's Standard Service Station (Witherington). In addition to the lease, the parties executed a dealer supply contract, a dealer security fund agreement, a dealer credit card agreement, and a dealer training course agreement.
In their answers to DOT's complaint, both Chevron and Witherington claimed that the taking of parcel 109 rendered the remainder of Chevron's property unsuitable for use as a service station and that they, therefore, were each individually entitled to business damages pursuant to section 73.071(3)(b), Florida Statutes (1985). Chevron also claimed severance damages and damages for the land taken. DOT's motion to dismiss Chevron's business damages claim was denied shortly before trial, and Chevron was allowed to present evidence concerning this claim to the jury. At the conclusion of the trial, Chevron was awarded $169,900 for the land taken, $176,500 for severance damages, and $231,631 for business damages. Witherington was also awarded business damages in the amount of $279,370. DOT did not take issue with Witherington's business damages award or Chevron's taking and severance damages awards but filed a timely notice of appeal challenging Chevron's business damages award.
Section 73.071(3)(b) provides in part that where less than the entire property is taken, damages caused by that taking which damage or destroy an established business of more than five years standing, owned by the party whose lands are being taken, and located upon adjoining lands owned or held by such party, are recoverable. The sole issue on this appeal concerns the propriety of the trial court's ruling that Chevron was entitled to business damages pursuant to this statutory provision.
Chevron contends that the trial court was correct in allowing it to present evidence concerning its business damages. According to Chevron, the evidence presented to the jury clearly established that it was engaged in a franchise arrangement with Witherington and that it had a major degree of control over and involvement in its dealer's business. Chevron owns the property, provides the fuel, takes a risk of loss, develops the customer base through credit sales and advertising, and provides name recognition by providing signs, logos, and trademarks. Additionally, Chevron sets the standards for conducting the business and conducts training programs and inspections. Chevron takes the *326 position that it was actually a coventurer with its dealer with each coventurer actively engaged in the merchandising business of motor fuels at the station taken, each interdependent on the other for the success of the business, and each generating a separate profit from the motor fuel business conducted at the site so that two business damages awards were proper and necessary.
DOT on the other hand contends that Chevron did not own a business having a physical existence on property adjoining the property taken and, therefore, was not entitled to business damages. Although DOT does not dispute that the relationship between Chevron and Witherington may have amounted to a franchise, DOT contends that this did not make Chevron an owner of the business on the premises nor did it establish that Chevron's business had a physical existence for more than five years at the location where the partial taking is alleged to have caused business damages. We agree with DOT.
Damages to a business located on land appropriated in an eminent domain proceeding do not constitute part of the constitutionally protected right of just compensation for the public taking of private land and, therefore, are only compensable if provided for by statute. Tampa-Hillsborough County Expressway Authority v. K.E. Morris Alignment Service, Inc., 444 So.2d 926 (Fla. 1983). In Morris, the supreme court stated that section 73.071(3)(b) should be strictly construed in favor of the state and that business damages should be awarded only when such an award appears clearly consistent with legislative intent. The court then interpreted the statute by saying the statute indicates that the legislative intent is to allow business damages only to concerns having a physical existence for more than five years at the location where the partial taking is alleged to have caused business damages. Morris. Since the trial court allowed the jury to consider business damages for both Chevron and Witherington, we must determine if there were two businesses having a physical existence at the location where the taking allegedly caused business damages. We conclude that although Chevron and Witherington were each engaged in operating individual businesses, only Witherington's business had a physical existence at the location in question.
This court has defined a business as the activity, the energy, the capacity, and the opportunities by which results are reached  a condition rather than a fixed tangible object from which a condition arises. Hodges v. Division of Administration, 323 So.2d 275 (Fla. 2d DCA 1975). Although the legislature has not chosen to define business location for the purposes of section 73.071(3)(b), in other acts, the legislature has defined a service location as a permanent location in or from which a licensee solicits, accepts, or conducts business, § 401.23(24), Fla. Stat. (1985), and defined a business location as any advertised permanent location in or from which pest control business is solicited, accepted, or conducted. § 482.021(3), Fla. Stat. (1985). In describing the requirements for licensing a general lines insurance agent, the legislature requires the agent to state in his application that he will maintain a place of business, the location of which is identifiable by and accessible to the public. § 626.731, Fla. Stat. (1985).
We have considered the above definitions, have assumed the legislature used the terms "business" and "business location" as these terms are commonly and ordinarily understood, and have applied common sense to the interpretation of these terms. See United States v. Porter, 591 F.2d 1048 (5th Cir.1979). As a result, we find that for purposes of establishing that one's business has a physical existence at a certain location for the purposes of section 73.071(3)(b) it is necessary to show that it is an identifiable location from which business, as hereinabove defined, is solicited, accepted, or conducted. Although Chevron's activities may have aided Witherington in selling fuel at retail and in turn enabled Chevron to sell more at wholesale, Chevron did not solicit, accept, or conduct its business, i.e., the wholesale sale of motor fuel, at the location in question and only delivered its product to Witherington *327 at that location. Witherington, on the other hand, was in the business of selling motor fuel at retail. As a retailer, he was engaged in the business of selling motor fuel to the ultimate consumers of the fuel at posted retail prices at the location in question. § 206.01(7), Fla. Stat. (1985). It would have been unlawful for him to sell fuel at wholesale without a wholesaler's license. § 206.02, Fla. Stat. (1985). Since it is undisputed that Witherington's retail business had a physical existence at the location in question, the business damages award to him was proper and, in fact, is not contested. We find, however, that Chevron's wholesale business did not have the necessary physical existence at that location.
In City of Tampa v. Texas Co., 107 So.2d 216 (Fla. 2d DCA), cert. denied, 109 So.2d 169 (Fla. 1958), we stated that an oil company which owns but does not operate a filling station, having leased the station to an individual to operate, and which wholesales its product to its lessee was not in the wholesale business at the involved location. Even though in this instance Chevron had more control of its lessee than the control shown in Texas Co. and even though the facts here tend to establish a franchise agreement between Chevron and Witherington, this does not change the result. We, accordingly, reaffirm our statement in Texas Co., reverse the award of business damages to Chevron in this case, and remand with instructions to enter a judgment for DOT on Chevron's claim for business damages. We affirm in all other respects.
Affirmed in part, reversed in part, and remanded.
DANAHY, C.J., and RYDER, J., concur.