LEHAN, Acting Chief Judge.
The issue in, and the facts of, this case are substantially indistinguishable from those in Dept, of Transportation v. Standard Oil Co., 510 So.2d 324 (Fla. 2d DCA 1987). On the authority of Standard Oil, we reverse the trial court’s final judgment which awarded business damages to Texaco, the sublessor of an automobile service station located on property partially taken by eminent domain. We reaffirm Standard Oil which we recognize had not been decided at the time of the final judgment in this case. If, as Texaco vigorously argues, Standard Oil represents an erroneous interpretation of legislative intent, that may be addressed by the legislature.
Texaco also argues that to deny it business damages constitutes a denial of equal protection of the law. Substantially the argument is that an oil company which operates a retail service station on property partially taken by eminent domain would recover its business damages, whereas, under Standard Oil and our holding here, an oil company like Texaco which subleases the property to a retailer who operates the station would not. But we agree with the Department of Transportation that those different classifications bear a reasonable relationship to a legitimate state interest and that to disallow business damages to entities like Texaco which derive income from wholesale sales to a business located on property partially taken by eminent domain but which do not physically operate their wholesale businesses on the property is not an unreasonable, unconstitutional classification. See In re Estate of Greenberg, 390 So.2d 40 (Fla.1980); State v. Lee, 356 So.2d 276 (Fla.1978). To adopt Texaco’s contention could place Texaco in a classification like that of multitudes of wholesale suppliers and others only indirectly *709 affected by an eminent domain taking, thereby opening the door to innumerable claims. We do not believe that a different result is required by the facts that Texaco was the lessee of the property and that it assisted its sublessee by, for example, having constructed the building and other physical improvements used by the retail business, allowing the business to be operated under the lessee’s nationally recognized company name with lessee’s signs and to use the lessee’s credit card services, conducting site inspections at the business to ensure compliance with the lessee’s standards, and paying the real estate taxes on the property.
We need not express conflict with Broward County v. Mobil Oil Corp., 461 So.2d 285 (Fla. 4th DCA 1985), which simply cited Dept. of Transportation v. Coulter, 43 Fla.Supp. 32 (Fla. 2d Cir.Ct.1973), and which Texaco describes as viewing the matter differently. Cf. Jollie v. State, 405 So.2d 418, 419 (Fla.1981). In any event, Coulter is in conflict with Jamesson v. Downtown Development Authority of City of Fort Lauderdale, 322 So.2d 510 (Fla.1975), in its conclusion that business damages are a part of constitutional “full compensation.” See Tampa-Hillsborough County Expressway Authority v. Campoamor Modern Dairy, Inc., 436 So.2d 922, 924 (Fla. 2d DCA 1983) (Lehan, J., dissenting).
We certify to the Florida Supreme Court the following question as being of great public importance:
IS A LESSEE OF PROPERTY PARTIALLY TAKEN BY EMINENT DOMAIN ENTITLED TO BUSINESS DAMAGES PURSUANT TO SECTION 73.-071(3)(b), FLORIDA STATUTES (1985), WHEN THE LESSEE IS A WHOLESALE SUPPLIER OF PRODUCTS TO A SUBLESSEE WHO OPERATES A RETAIL BUSINESS ON THE PROPERTY AND THE LESSEE ASSISTS ITS SUB-LESSEE IN THAT RETAIL BUSINESS BY, FOR EXAMPLE, HAVING CONSTRUCTED THE BUILDING AND OTHER PHYSICAL IMPROVEMENTS USED BY THE RETAIL BUSINESS, ALLOWING THE BUSINESS TO BE OPERATED UNDER THE LESSEE’S NATIONALLY RECOGNIZED COMPANY NAME WITH LESSEE’S SIGNS AND TO USE THE LESSEE’S CREDIT CARD SERVICES, CONDUCTING SITE INSPECTIONS AT THE BUSINESS TO ENSURE COMPLIANCE WITH THE LESSEE’S STANDARDS, AND PAYING THE REAL ESTATE TAXES ON THE PROPERTY?
Reversed and remanded for proceedings consistent herewith.
FRANK and PARKER, JJ., concur.